UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YURISLANDY MIRANDA DIAZ, | Case No. 1:26-cv-03653 (VC) |
| Petitioner, | **ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | Re: Dkt. Nos. 1, 2 |
| WARDEN, CALIFORNIA CITY CORRECTION CENTER, *et al.*, | |
| Respondents. | |

This habeas action concerns the detention of Petitioner Yurislandy Miranda Diaz, a noncitizen who has lived in the United States since May 20, 2023. Based on the Government's new interpretation of 8 U.S.C. § 1225(b)(2) as mandating detention for all noncitizens present in the United States without admission, Petitioner was detained without any finding of changed circumstances by a neutral decisionmaker that he was a flight risk or danger to the community. This matter is before the Court on Petitioner's writ of habeas corpus and "motion for immediate release or, in the alternative, a bond hearing." *See* Dkt. 1, 2. For the reasons explained below, the Court GRANTS Petitioner's writ of habeas corpus, and resolves the motion as moot.

I.      **BACKGROUND**

Petitioner is a citizen of Cuba who entered the United States at or near Eagle Pass, Texas on or about May 20, 2023. Dkt. 7-1 at 2. At the time of entry, he was encountered by U.S. Customs and Border Patrol ("CBP"). *Id*. CBP issued Petitioner a Notice to Appear and paroled him into the United States. *Id*. Neither Petitioner nor Respondents have indicated under what statutory basis CBP paroled Petitioner. Neither party has indicated that Petitioner is subject to a

final order of removal or when Petitioner's next immigration court hearing is.

Following his release, Petitioner submitted an Application to Register for Permanent Residence of Adjustment of Status pursuant to the Cuban Adjustment Act, which remains pending with USCIS. Dkt. 11 at 2. He also began living with his uncle and aunt in Miami, Florida, reunited with his sister who is a lawful permanent resident, and began working at a house remodeling company. *Id*.

Petitioner was re-detained by U.S. Immigrations and Customs Enforcement ("ICE") on January 18, 2026 following an arrest for driving under the influence. Dkt. 7-1 at 2. ICE issued a warrant for this arrest on January 17, 2026 which explains that an immigration officer determined "that there was probable cause to believe that [Petitioner was] [] removable from the United States" based on the "biometric confirmation of the [Petitioner]'s identity and a records check of federal databases that affirmatively indicate … that [Petitioner] either lack immigration status or notwithstanding that status is removable under U.S. immigration law[.]" *Id*. at 4. The warrant does not indicate that Petitioner's re-arrest was based on any changed circumstances, such as Petitioner being a danger to the community or that he was a flight risk.

## II.    DISCUSSION

Proceeding pro se, Petitioner filed this habeas petition and a motion for immediate release on May 12, 2026, arguing that his re-detention without an individualized finding of changed circumstances violated his procedural due process rights. Dkt. 1 at 2. Respondents maintain that "Petitioner is an 'applicant for admission' who is subject to mandatory detention" under 8 U.S.C. §1225(b)(2). Dkt. 7 at 1. Respondents further argue that Petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress, and that it was his encounter with law enforcement that led to his re-detention. *Id*. at 2–3.

### A.    Detention Authority

Respondents' argument that Petitioner may be mandatorily detained under 8 U.S.C. § 1225(b)(2) has been widely rejected across this circuit, and indeed, throughout the United States where an individual was previously released on parole. *See, e.g., Benavente v. Raycraft*, 820 F.

2

Supp. 3d 661, 669-70 (W.D. Mich. 2025) (collecting cases); *Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1107–08 (E.D. Cal. 2025); *Aguiar Olivares v. ICE Custodian*, No. 9:26-CV-00203 (AMN), 2026 WL 686090, at *6 (N.D.N.Y. Mar. 11, 2026). "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2) [i.e., Section 235 of the INA]. It also authorizes the Government to detain certain aliens *already in* the country pending the outcome of removal proceedings under §§ 1226(a) and (c) [i.e., Section 236 of the INA].")." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis added). As such, the Court finds meritless the Government's position that Petitioner—who, more than three years ago, made an appointment with immigration authorities, presented himself at a port of entry, was paroled into the country, and whose application to register for permanent residence or adjustment of status remains pending—is "seeking admission" and subject to mandatory detention as if he had been arrested attempting to unlawfully cross the border. Given Respondents' failure to articulate a lawful basis for Petitioner's detention, the Court next turns to his due process claim.

### B.    Due Process

Petitioner's constitutional challenge is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (*citing Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

### 1.    Liberty Interest

"A protected liberty interest may arise from a conditional release from physical restraint." *Omer G. G.*, 815 F. Supp. 3d at1108 (citing *Young v. Harper*, 520 U.S. 143, 147–49 (1997)). As such, "[e]ven when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute." *Omer G.G.*, 815 F. Supp. 3d at 1108.

Petitioner has a protected liberty interest in his continued freedom following his May 20, 2023 release on parole. Upon release, a parolee is allowed to live at liberty and establish ties in the community based "on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). For three years Petitioner's parole has allowed him to establish ties in the community while pursuing relief in his removal proceedings by applying for adjustment of legal status. These actions were made possible by Petitioner's freedom, which is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). As such, Petitioner has a protected liberty interest in his release. *See R.A.N.O. v. Wofford*, 820 F. Supp. 3d 1094, 1102–03 (E.D. Cal. 2026) (Petitioner had a protected liberty interest in continued freedom following his release on parole).

### 2.    *Mathews* Factors

Many courts have applied the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due in the immigration context where a noncitizen possesses a protected liberty interest in his continued release. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). There are three factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first *Mathews* factor, the Court finds that Petitioner has a substantial private interest in remaining out of immigration custody because he has been released pending civil removal proceedings for nearly three years. After his release, Petitioner was able to develop ties in the community as his removal proceedings progressed. "[His] detention denies [him] that freedom." *Omer*, 815 F. Supp. 3d at 1111.

Turning to the second factor, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the petitioner] has not received any bond or custody redetermination hearing."

*A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Padilla v. U.S. Immigr. & Customs Env't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). The record before the Court indicates that there was no independent finding by a neutral arbiter that Petitioner had violated any conditions of his parole.

Respondents maintain, however, that Petitioner's "encounter with law enforcement" is what led to his period of release being terminated. Dkt. No. 7 at 3. However, Respondents have not pointed to any procedural safeguards suggesting that a finding of dangerousness or flight risk was made prior to this revocation. Though an immigration officer issued a warrant before Petitioner's arrest, the warrant on its face does not identify any changed circumstances. The sole basis justifying arrest was that Petitioner was in removal proceedings—something that the government has known since Petitioner entered the United States on May 20, 2023. Dkt. 7-1 at 2. As there have been no procedural safeguards to determine if Petitioner's re-detention is justified based on changed circumstances, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5; *see also See Llanes Tellez v. Bondi*, No. 25-CV-08982-PCP, 2025 WL 3677937, at *8 (N.D. Cal. Dec. 18, 2025) (DUI arrest was insufficient justification for re-detention without providing any procedural safeguards required by due process); *Dicxon Jose P.C v. Warden, California City Det. Facility*, No. 1:26-CV-02658-TLN-CSK, 2026 WL 1045516, at *3 (E.D. Cal. Apr. 17, 2026) (similar).

The final *Mathews* factor also weighs in Petitioner's favor. Although the Government has a strong interest in enforcing the immigration laws, its' interest in detaining Petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 787 F. Supp. 3d at 1094. "If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so," but it must provide Petitioner with a hearing first. *Ortega*, 415 F. Supp. 3d at 970.

In light of the fact that Respondents failed to make any showing of changed circumstances before re-detaining Petitioner, he is entitled to release.

## III.    CONCLUSION AND ORDER

For the reasons stated above, the Petition is GRANTED.  IT IS HEREBY ORDERED that:

1.    Respondents immediately release Petitioner Yurislandy Miranda Diaz from their custody.

2.    Respondents shall not impose any additional restrictions on Petitioner, unless they are determined to be necessary at a future pre-deprivation and/or custody hearing.

3.    If the Government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which Petitioner's eligibility for bond must be considered. This Order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal.

4.    The Clerk of the Court is directed to close this case and enter judgment for Petitioner.


**IT IS SO ORDERED.**

Dated: June 18, 2026

_____

VINCE CHHABRIA
United States District Judge